1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| THE COMMITTEE CONCERNING COMMUNITY IMPROVEMENT, et al., | ) 1:04cv6121 AWI DLB |
| | ) |
| | ) ORDER DENYING IN PART AND |
| | ) GRANTING IN PART MOTION FOR LEAVE |
| Plaintiffs | ) TO FILE THIRD AMENDED COMPLAINT |
| | ) |
| v. | ) (Document 160) |
| | ) |
| CITY OF MODESTO, et al., | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

9
10
11
12
13
14
15
16
17

Plaintiffs Committee Concerning Community Improvement, et al., ("Plaintiffs") filed the

18

instant Motion for Leave to File a Third Amended Complaint on October 27, 2006.  The matter

19

was heard on December 15, 2006, before the Honorable Dennis L. Beck, United States

20

Magistrate Judge.  Brian P. Bosnahan and Robert Rubin appeared on behalf of Plaintiffs.  John E.

21

McDermott appeared on behalf of Defendant City of Modesto.  Terence Cassidy appeared on

22

behalf of Defendants County of Stanislaus and Stanislaus County Sheriff.

23

## FACTUAL AND PROCEDURAL BACKGROUND

24

Plaintiffs in this action live in four predominantly Latino neighborhoods ("Plaintiff

25

Neighborhoods").  Plaintiff Neighborhoods are in the unincorporated area of Defendant

26

Stanislaus County ("County") and within in the "Sphere of Influence"[1] of Defendant City of

27
28

---

[1] The "sphere of influence" is the physical boundary that a local government agency is expected to serve.

1

Modesto ("City") (collectively "Defendants").  The Plaintiff neighborhoods are surrounded by the City but are not part of the incorporated City.  Plaintiffs allege that the Plaintiff Neighborhoods do not receive the same level of municipal services as the surrounding predominantly White neighborhoods.

Plaintiffs filed this action on August 8, 2004, alleging the following causes of action: (1) violation of the Fair Housing Act, section 3604(b), based on discrimination in the provision of services and facilities in connection with Plaintiffs' housing; (2) denial of equal protection based on Defendants' (a) implementation of the annexation scheme; and (b) denial of services that are available to others in the City and County in a way that intentionally discriminates against Plaintiffs on the basis of race; (3) violation of Title VI of the Civil Rights Act of 1962, 42 U.S.C. § 2000d based on the City and County's use of federal funds in providing services in a discriminatory manner; (4) violation of the California Fair Employment and Housing Act based on Defendants' use of public practices; (5) violation of California Government Code section 11135 based on Defendants' use of State funds in providing services in a discriminatory manner; and (6) common law and statutory nuisance based on interference with Plaintiffs' use and enjoyment of their land.  Plaintiffs seek declaratory and injunctive relief.

Defendants filed motions to dismiss portions of the complaint.  On December 30, 2004, the Honorable Robert E. Coyle issued an order (1) dismissing the Fair Housing Act claim because the Act did not pertain to claims regarding the provision of services to existing homeowners and renters, but instead applied only to persons actually obstructed or impeded from obtaining housing; (2) dismissing all individually-named Defendants; and (3) dismissing any claims regarding annexation because (a) the City does not approve or disapprove annexations; and (b) Plaintiffs have no claim against the City for failing to seek annexation because they never made any application for annexation except in one instance beyond the statute of limitations. Judge Coyle also acknowledged Plaintiffs' concession that the City was not required to provide municipal services to unincorporated areas and instructed Plaintiffs to remove any such allegations.

On April 6, 2005, Plaintiffs filed their First Amended Complaint ("FAC").  The City moved to strike because the FAC was inconsistent with Judge Coyle's ruling.  By stipulation, Plaintiffs withdrew the FAC and filed a Second Amended Complaint ("SAC") on May 24, 2005.

The SAC does not contain a Fair Housing Act claim, a discriminatory annexation claim, or a claim that the City is obligated to provide the same services to unincorporated areas that it provides to incorporated areas.  Plaintiffs' remaining claims were framed as discrimination in the provision of voluntary municipal services in White unincorporated areas compared to Latino unincorporated areas.

County Defendants answered the SAC on June 6, 2005.  The City answered on June 7, 2005.

On August 22, 2005, the City moved for summary judgment.  In September, the City withdrew the motion to allow Plaintiffs to conduct discovery.

The parties subsequently entered into an Agreement ("the Agreement") on August 31, 2005, limiting Plaintiffs' case to three services voluntarily provided to unincorporated areas- sewers, police service and bilingual assistance in police service.  Exhibit I, attached to Declaration of John E. McDermott in Support of Opposition.

On May 23, 2006, the parties entered into a stipulation to extend deadlines.  Discovery closed on October 16, 2006.  The non-dispositive motion deadline was November 3, 2006.  The expert discovery cut-off was December 18, 2006.  The dispositive motion deadline is January 12, 2006.  Trial is currently set for May 8, 2007.

On August 17, 2006, the City filed a motion for summary judgment to eliminate Plaintiffs' claims of discrimination in police service and bilingual assistance in police service.  The hearing was continued numerous times and on November 2, 2006, the Honorable Anthony W. Ishii vacated the hearing pending the outcome of the instant motion.

Plaintiffs filed this Motion For Leave to File a Third Amended Complaint ("TAC") on October 27, 2006.  According to Plaintiffs, this motion seeks:

1.  To delete the names of five Plaintiffs who have withdrawn and to clarify that Plaintiffs do not seek an award of attorneys' fees incurred by California Rural Legal Services;

2.  To clarify and make more precise allegations concerning Defendants' failure to provide municipal services in a non-discriminatory manner, including through the addition of details concerning the City's implementation of its "Measure M"[2] policy, the City and County's failure to provide infrastructure in the Plaintiff Neighborhoods, and the role played by the exclusion of the Plaintiff Neighborhoods from the "Master Tax Sharing Agreement"[3] entered into by the City and County;

3.  Make explicit their claim that City and County are jointly liable with respect to discrimination concerning law enforcement services and bilingual services relating thereto, based on the Joint Powers Agreement;

4.  Make explicit their theory that City and County are jointly liable with respect to *all* causes of action based upon their deep entwinement and interdependence; and

5.  To add a new claim for perpetual segregation under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a).

The City and County Defendants filed oppositions on November 28, 2006. Plaintiffs filed their reply on December 8, 2006.

## LEGAL STANDARD

Federal Rule of Civil Procedure Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." The United States Supreme Court has stated:

---

[2] Measure M, passed by voters in 1997, requires the City to hold an advisory vote prior to extending sewer services to unincorporated areas. Plaintiffs allege that the City implements the measure in a discriminatory manner, resulting in few Latino unincorporated neighborhoods getting Measure M votes.

[3] The Master Tax Sharing Agreement governs how property tax revenues are shared between the City and County once land passes from the County to the City through annexation. It theoretically encourages annexations because the tax sharing issue is worked out in advance. Plaintiffs allege that most of the Plaintiff Neighborhoods are excluded from the scope of the Agreement and therefore face an additional barrier to annexation.

[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).  The Ninth Circuit has summarized these factors to include the following: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of amendment.  Loehr v. Ventura County Cmty. Coll. Dist., 743 F.2d 1310, 1319 (9th Cir. 1984).  Granting or denial of leave to amend rests in the sound discretion of the trial court. Swanson v. United States Forest Serv., 87 F.3d 339, 343 (9th Cir. 1996).  Despite the policy favoring amendment under Rule 15, leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.  Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

## ANALYSIS

A.   Deletion of Plaintiffs and Clarification of Award

     Defendants do not oppose this request.  Plaintiffs' motion to amend to delete certain Plaintiffs and clarify the award is therefore GRANTED.

B.   Clarification of Allegations Concerning Defendants' Failure to Provide Municipal Services in a Non-discriminatory Manner

     Plaintiffs next request to amend the SAC to clarify its allegations concerning Defendants' failure to provide municipal services in a non-discriminatory manner.  In doing so, Plaintiffs wish to add details concerning the City's implementation of its Measure M policy, the City and County's failure to provide infrastructure in the Plaintiff Neighborhoods, and the role played by the exclusion of the Plaintiff Neighborhoods from the "Master Tax Sharing Agreement" ("MTSA") entered into by the City and County.

     Plaintiffs argue that these amendments will not materially alter the nature of the claims and are made simply to conform the SAC to the evidence.  Plaintiffs argue that "recent investigation has brought to light new facts . . . further clarifying the salient facts regarding the City's implementation of its 'Measure M' policy, the nature and importance of the 'Master Tax Sharing Agreement' and its predecessor agreement, the City and County's disparate failure to provide infrastructure . . ."  Motion, at 3-4.  As examples, Plaintiffs point to (1) the October 9,

2006, deposition testimony of County CEO Reagan Wilson, who testified that the City excluded "previously established" neighborhoods from the MTSA because of infrastructure demands; (2) the September 27, 2006, deposition testimony of County Supervisor Thomas Mayfield, who testified that the Keyes storm drain project was $17 million instead of $7.5 million as represented in produced documents; and (3) that they learned in early October 2006 that the reason the property tax negotiation concerning the Bret Harte annexation failed is because the City insisted that it receive 100% of property taxes after annexation, while the County would only offer 50%. Plaintiffs further contend that Defendants will not need to pursue further discovery or analysis because the new factual allegations are based on Plaintiffs' review of documents in Defendants' custody and depositions of Defendants' witnesses.

Defendants oppose this amendment mainly on the basis of delay, contending that Plaintiffs knew, or should have known, of the facts underlying these amendments long ago.  In evaluating undue delay, the court must inquire "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) (eight month delay from time of obtaining facts until filing amended complaint unreasonable).  Delay is especially relevant when no reason is given for the delay and the facts were available to plaintiff to allow for a timely amendment.  Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999).

Defendants argument regarding delay assumes that these clarifying amendments seek to add new facts.  However, facts surrounding Measure M, the MTSA and the alleged failure to provide infrastructure cannot be characterized as new facts.  The parties have been aware of these issues for some time.  Indeed, the SAC contains detailed information about Measure M.  SAC, ¶ 38.  Plaintiffs' amendments simply seek to expand upon facts already known to the parties.

Plaintiffs' motion to amend to add facts regarding Measure M, the MTSA and the alleged failure to provide infrastructure is therefore GRANTED.  However, as explained in detail below, these amendments SHALL NOT be made in connection with Plaintiffs' assertion of a joint liability theory or perpetual segregation claim.

1    Insofar as Defendants argue that any claims involving services in incorporated territory

2    should not be allowed (i.e., TAC ¶ 1, 2, 4, 48), such a determination cannot be made at this stage

3    of the litigation.  The Court acknowledges Judge Coyle's prior ruling and the parties' stipulation

4    to withdraw the FAC.  However, this inquiry depends on the focus of Plaintiffs' equal protection

5    claim- whether it involves Latino unincorporated areas vs. White unincorporated areas, or Latino

6    unincorporated areas vs. all White areas.  This is a determination that should not be made at the

7    pleading stage, but rather should be made on legal motions or at trial, when the Court can

8    determine the appropriate comparisons for the equal protection analysis.  __

9    C.    Adding Facts to Make Explicit Plaintiffs' Theory that the City and County are Jointly
           Liable with Respect to Discrimination Concerning Law Enforcement Services and
10         Bilingual Services Relating Thereto

11         Plaintiffs base this "clarification" on the Joint Powers Agreement between the City and

12   County, and argue that this theory has been asserted in connection with Defendants' pending

13   summary judgment motion and in interrogatory responses served nearly a year ago.

14         Again, Defendants oppose this amendment based on Plaintiffs' delay.  The City argues

15   that Plaintiffs give no excuse for delaying in seeking to amend to add a claim disclosed in

16   discovery a year ago.  The City characterizes this as a purposeful delay designed to make it

17   difficult to move for summary judgment and argues that this claim should be denied entirely.

18         Plaintiffs' own admissions make it apparent that they could have raised this claim long

19   ago.  In arguing in support of this amendment, Plaintiffs state that Defendants were aware of the

20   new factual allegation, i.e., they have known about the Joint Powers Agreement theory of joint

21   liability since November 2005, when Plaintiffs disclosed it in discovery.  Although Plaintiffs

22   argue that recent investigation has revealed new facts to support their joint liability theory, the

23   fact remains that Plaintiffs were aware of the general facts supporting this amendment and could

24   have made the amendment long ago.  Plaintiffs' request is therefore DENIED.____

25   ///

26   ///

27   ///

28

D.  Adding Facts to Make Explicit Plaintiffs' Theory that the City and Council are Jointly Liable with Respect to ALL Causes of Action Based Upon Their Entwinement

By this amendment, Plaintiffs seek to add allegations to support their theory that the City and County are jointly liable with respect to all causes of action based on their deep entwinement and interdependence.

Plaintiffs explain that their theory is a "novel but important one" based on a complex set of facts, the scope and meaning of which was not readily apparent.  Plaintiffs contend that many of the facts were discovered in the past few months.  Plaintiffs further contend that this theory has been a subject of discussion with the City and a topic of discovery with both Defendants.

In support of their amendment, Plaintiffs argue that this theory of joint liability is warranted by existing law or by a nonfrivolous argument for the extension of the principles applied in Burton v. Wilmington Parking Auth., et al., 365 U.S. 715 (1961) and Brentwood Academy v. Tennessee Secondary School Athletic Assn., 531 U.S. 288 (2001).

In Burton, the Supreme Court found that the discriminatory actions of a private restaurant could be attributed to the State for purposes of the Fourteenth Amendment.  The private restaurant was under lease in a building financed by public funds and owned by the State parking authority.  The Court based its decision on the fact that the relationship conferred mutual benefit, that upkeep of the building was the responsibility of the State parking authority, and the fact that profits earned by the discrimination of the private entity contributed to the financial success of a government agency.  The Court explained that "[t]he State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment."  Burton, 365 U.S. at 725.  The Court cautioned, however, that this finding was very fact specific and that the conclusion will not be true of all state leasing relationships.  "[I]t must be remembered [that whether a government lease falls within the scope of the Fourteenth Amendment] can be determined only in the framework of the peculiar facts or circumstances present."  Id. at 726.

1    Brentwood involved a similar analysis.  There, the Supreme Court determined that

2    regulatory enforcement actions of an interscholastic athletic association, a nominally private and

3    non-profit corporation, were considered state action.  This finding was based on numerous

4    factors: the pervasive entwinement of public institutions and public officials in the association's

5    composition and workings; public schools constituted 84% of its membership; half of council

6    and board meetings were held during official school hours; public schools provided for the

7    association's financial support by giving up sources of their own income; members of the state

8    board of education served as members of the association's governing boards; and the

9    association's ministerial employees were eligible for membership in state retirement system.

10   Brentwood, 531 U.S. 298-300.

11       Burton and Brentwood therefore stand for the proposition that private action can be found

12   to be that of the state in certain factual situations where the acts of the two are difficult to

13   distinguish.  In other words, the holdings make action that would have otherwise been outside the

14   scope of Fourteenth Amendment into covered state action based on the entwinement of the

15   entities.  The cases do not, as Plaintiffs argue, suggest that two state actors, as joint participants

16   in public action, could somehow be found jointly and severally liable for their actions.  The case

17   before this Court involves two independent governmental entities whose actions will not confer

18   joint and several liability unless the actions of *each* are found to be discriminatory.  The Court

19   need not undertake an analysis of the City and County's entwinement to determine if private

20   action constitutes state action, as in Burton and Brentwood, both entities are already within the

21   purview of the Fourteenth Amendment.  Burton and Brentwood are therefore inapplicable to the

22   instant case and do not support Plaintiffs' argument for an extension of the principles set forth

23   therein.

24       _____It is also likely that Plaintiffs could have made this amendment long ago.  The

25   relationship between the City and County has been apparent (1) from discovery for some time;

26   and (2) from the common knowledge of the interactions between a city and the county within

27   which it sits.

28

9

1    _____Plaintiffs' request to amend the SAC to allege joint and several liability as to all causes of

2    action is therefore DENIED.

3    E.       Adding a New Claim for Perpetual Segregation

4    _____Finally, Plaintiffs request to amend the complaint to add a new claim for perpetual

5    segregation under FHA section 3406(a).  Section 3604(a) makes it unlawful "[t]o refuse to sell or

6    rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or

7    otherwise make unavailable or deny, a dwelling to any person because of race, color, religion,

8    sex, familial status, or national origin."  42 U.S.C. § 3604(a).  This claim is based on actions of

9    the City and County that allegedly perpetuate segregation by increasing the concentration of

10   Latinos in Latino Unincorporated Neighborhoods.  They also allege that average home values are

11   lower and septic systems are more likely to fail, which further decreases property values and

12   decreases the chances of obtaining a mortgage.  This, combined with the lower income, results in

13   a situation where Latinos are disparately pushed into the Plaintiff Neighborhoods.  (TAC, ¶ 75).

14          First and foremost, Plaintiffs' claim is not supported by case law.  Insofar as Plaintiffs

15   characterize this as a "free-standing" claim for perpetuation of segregation that does not need to

16   be made in connection with any particular dwelling, their argument fails.

17          Plaintiffs rely mainly on Metropolitan Housing Development Corp. v. Village of

18   Arlington Heights: 558 F.2d 1283 (7th Cir. 1977) and Huntington Branch NAACP v. Town of

19   Huntington, 844 F.2d 926 (2d Cir. 1988).  In these cases, the courts analyzed zoning decisions

20   under section 3406(a).  In Arlington Heights, the court noted that the village's refusal to permit

21   construction of a low-income housing project, which would have to be racially integrated in

22   order to qualify for federal subsidization, had a discriminatory effect in that it perpetuated

23   segregation in the village.  The court held that "if there is no land other than plaintiffs' property

24   within Arlington Heights which is both properly zoned and suitable for federally subsidized

25   low-cost housing, the Village's refusal to rezone constituted a violation of section 3604(a)."  In

26   making this determination, however, the court nonetheless used the "inquiry to whether the

27   refusal to rezone made unavailable or denied a dwelling to any person because of race within the

28   meaning of section 3604(a)."  Arlington Heights, 558 F.2d at 1288.

1    In Huntington, the court was called upon to decide whether an overwhelmingly White

2    suburb's zoning regulation, which restricted private multi-family housing projects to a largely

3    minority "urban renewal area," and the Town Board's refusal to amend that ordinance to allow

4    construction of subsidized housing in a White neighborhood, violated the FHA.  Using a

5    disparate impact analysis, the court concluded that the "strong showing of discriminatory effect

6    resulting from the Town's adherence to its [] zoning category and its refusal to rezone . . . far

7    outweigh the Town's weak justifications." Huntington, 844 F.2d at 940-941.  The court held that

8    the Town violated the FHA by refusing to amend the zoning ordinance to permit private

9    developers to build multi-family dwellings outside the urban renewal area and by refusing to

10   rezone the site. Id. at 940-941.

11   Plaintiffs compare Measure M and the MTSA to the zoning decisions at issue in

12   Arlington Heights and Huntington. Just as the ordinances in those cases kept minorities out of

13   cities, Plaintiffs contend that Measure M and the MTSA effectively keeps Latinos out of the City

14   of Modesto.  While this may be a welcomed comparison, Plaintiffs fail to acknowledge the

15   parameters of the law underlying the holdings of the cited cases.

16   Section 3406(a), like section 3406(b), makes it unlawful to "make unavailable or deny, a

17   dwelling" for reasons such as race. 42 U.S.C. § 3406.  As such, it is directed at the unavailability

18   and denial of housing to buyers, rather than the impact of habitability or value of already

19   acquired property.  In his order granting the motion to dismiss, Judge Coyle found the reasoning

20   in Cox v. City of Dallas 430 F.3d 734 (5th Cir. 2005) persuasive in dismissing the section

21   3604(b) claim.  This Court also finds Cox persuasive in determining the reach of section 3604(a).

22   In Cox, the plaintiffs alleged that the city of Dallas violated section 3604(a) when it failed

23   to prevent dumping at a site near their homes.  The issue was whether the failures and omissions

24   by the City violated the FHA by "otherwise mak[ing] unavailable or deny[ing]" a dwelling to any

25   person because of race."  Plaintiffs argued that the City violated section 3604(a) because the

26   dump made it more difficult for them to sell their homes and lowered the value of their homes.

27   The court recognized that the claim had factual support, but that it was not a claim of

28   "unavailability" or "den[ial]" of housing under a proper reading of the FHA.  Cox, 430 F.3d at

1   740. The Fifth Circuit explained that "the failure of the City to police the Deepwood landfill

2   may have harmed the housing market, decreased home values, or adversely impacted

3   homeowners' 'intangible interests,' but such results do not make dwellings 'unavailable' within

4   the meaning of the Act." Id. "We hold only that § 3604(a) gives no right of action to current

5   owners claiming that the value or 'habitability' of their property has decreased due to

6   discrimination in the delivery of protective city services." Id.

7        Applying Cox to the instant case, Plaintiffs' proposed amendment is futile.  Section

8   3604(a) does not protect Plaintiffs against a decrease in the value of their homes because it does

9   not make the dwellings unavailable to them.  As Judge Coyle found, Plaintiffs already own their

10  homes.  Contrary to Plaintiffs' argument, a perpetual segregation claim does not do away with

11  the requirement that Plaintiffs be denied housing.  In both Arlington Heights and Huntington, the

12  courts analyzed the facts within the framework of a denial of housing even though the cases

13  involved the perpetuation of segregation through zoning decisions.  In other words, the

14  segregation resulted from the denial of housing.  Here, the alleged segregation is a result of the

15  allegedly discriminatory annexation decisions, not from a denial of housing.

16       Defendants argue, and this Court agrees, that this amendment is an attempt to resurrect

17  their annexation claim and their claim to all services for unincorporated areas that the City

18  provides to incorporated areas.  Although Plaintiffs argue that this new claim is distinguishable

19  because it is based on a broader series of actions and policies, i.e., Measure M and the MTSA,

20  the core of the argument revolves around the fact that Defendants have not annexed the Plaintiff

21  Neighborhoods.

22       Moreover, to the extent that Plaintiffs are attempting to restate an annexation argument

23  and seek relief relating to services other than the three covered by the Agreement, their attempt is

24  contrary to the parties' stipulation and Agreement in which Plaintiffs admitted that the City has

25  no duty to provide services to a non-annexed area.  By attempting to return to the issue that the

26  failure to annex the Plaintiff neighborhoods caused the alleged harm, Plaintiffs are unfairly

27  attempting to resurrect an issue that Defendants believed to be put to rest.  Indeed, Defendants

28  refused discovery on services not covered by the Agreement.

Finally, although Plaintiffs contend that this claim is based upon the same set of facts as the other claims and therefore would not require new discovery, this new claim would likely require a significant amount of new discovery.  Defendants state that there have been 39 annexations since 1984.  The parties would likely have to undertake discovery on facts relating to segregation and the valuation of houses as a result of each annexation.  Additional experts would certainly be needed.  This amendment would also likely result in a new round of motion practice, which would be quite prejudicial given that Defendants have already briefed summary judgment.

Therefore, Plaintiffs' request to amend the complaint to add a cause of action for perpetual segregation is DENIED.

F.   Prejudice

As to each of the proposed amendments Plaintiffs maintain that little, if any, new discovery would be necessary.  Defendants, on the other hand, maintain that significant new discovery in the form of interrogatories on the new claims, depositions and new and different analyses by experts would be necessary.  The Court agrees that significant additional discovery and analyses by experts would be necessary if Plaintiffs' motion were granted.  It is also apparent that existing deadlines, including the trial date, would have to be extended many months.  Finally it appears form the timing of this motion that it is indeed an effort to moot the pending motion for summary judgement.  In Plaintiffs' delay in bringing this motion is this prejudice requires the Court to deny the motions to amend.

ORDER

_____For the above reasons, Plaintiffs' Motion for Leave to File a Third Amended Complaint is DENIED IN PART AND GRANTED IN PART.  Plaintiffs SHALL file a Third Amended Complaint in compliance with this order within ten (10) days of the date of service of this order.

IT IS SO ORDERED.

Dated:   __December 27, 2006__          _____/s/ **Dennis L. Beck**_____
3b142a                                            UNITED STATES MAGISTRATE JUDGE

13