IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE COMMITTEE CONCERNING COMMUNITY IMPROVEMENT, et al,<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>CITY OF MODESTO, et al,<br><br>　　　　　　　Defendants.<br>_____/ | CASE NO. CV-F-04-6121 LJO DLB<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PARKS, STATE LAW CLAIMS AND REMAINING CLAIMS** (Doc. 398) |

This motion is the fourth of four summary judgment motions by the County of Stanislaus challenging plaintiffs' allegations of discriminatory provision of public services. Specifically, plaintiffs challenge the County's provision of parks, use of state government funding, and common law nuisance in plaintiffs' neighborhoods.

**FACTUAL AND PROCEDURAL BACKGROUND**

This is an action for declaratory and injunctive relief by plaintiffs The Committee Concerning Community Improvement, South United Neighbors and individuals living in certain unincorporated areas in the County of Stanislaus. The individual plaintiffs reside in neighborhoods which are informally known as "Bret Harte," "Rouse-Colorado," or "Hatch-Midway" and "Robertson Road" and are predominately Latino neighborhoods.[1] Plaintiffs allege that these Latino neighborhoods receive fewer

---

[1] "Rouse-Colorado" is known as "the Garden", and "Hatch-Midway" is also known as "No Man's Land."

1

and poorer public services than other neighborhoods in Modesto with predominantly white populations.

As relevant to this motion, plaintiffs allege defendants discriminate against them in the County's provision of parks, use of state government funding to fund public services, and that common law nuisance exists in plaintiff neighborhoods. (Third Amended Complaint "TAC" ¶40, 53, 63, among other allegations.) The Parklawn park is in the Hatch-Midway neighborhood and the Fairview Park is in the Bret Hart neighborhood. As relevant to this motion, these two parks are maintained by the County. Plaintiffs allege that the parks in the unincorporated Neighborhoods have not been developed and maintained on an equal basis to other County parks serving predominantly White areas. (TAC 53.) Residents of the two other plaintiffs neighborhoods, Robertson Road and Rouse-Colorado neighborhoods, have immediate access to Robertson Road Park, James Marshall Park and The Fairway Park, all of which are owned and maintained by the City of Modesto. (Doc. 423, Plaintiffs' Response to Undisputed Facts, no. 6-7.)

As to discriminatory actions relating to funding, plaintiffs reargue that the County's infrastructure spending priorities have a disparate impact on Latinos. (See Doc. 417, July 30, 2007 Order; and Doc. 418, Plaintiffs' Opposition Brief p.12.) Plaintiffs argue that the County has pursued a policy of prioritizing storm drain projects in white neighborhoods - that already have sewers - over sewer or storm drains in Latino neighborhoods. (Doc. 418, Plaintiffs' Opposition Brief p. 12.)

Plaintiffs also reargue that the Sheriff is liable for discriminatory dispatch of law enforcement to plaintiff neighborhoods. (Doc. 395, July 2, 2007 Order; and Doc. 423, Plaintiffs' Opposition Brief p.13.) Plaintiffs argue that dispatch data from Stanislaus Regional 911 demonstrates a disparate impact for plaintiffs and Latino neighborhoods. (Doc. 418, Plaintiffs' Opposition Brief p. 13.)

As relevant to this motion, the Third Amended Complaint alleges the County violated plaintiffs' rights by:

> (1) denial of Equal Protection and Civil Rights (42 U.S.C. §1983) based on Defendants' denial of services that are available to others in the City and County in a way that intentionally discriminates against Plaintiffs on the basis of race, ethnicity etc. (¶70);
>
> (2) violation of Title VI of the Civil Rights Act of 1962, 42 U.S.C. § 2000d and 42 U.S.C. §1983 based on the City and County's use of federal funds in providing services in a discriminatory manner (¶74);

    (3) violation of the California Fair Employment and Housing Act, Govt.Code §12955(l) based on Defendants' use of public land use practices in providing pubic services (¶77);

    (4) violation of California Govt Code §11135 based on Defendants' use of State funds in providing services in a discriminatory manner (¶80-81); and

    (5) common law and statutory nuisance based on interference with Plaintiffs' use and enjoyment of their land. Plaintiffs seek declaratory and injunctive relief.

Defendants County of Stansilaus and Sheriff's Department moved for summary judgment on July 10, 2007. (Doc. 398-404.) Plaintiffs filed their opposition on July 31, 2007. (Doc. 418-424.) Defendants filed their reply on August 14, 2007. (Doc. 425-428.) Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

## ANALYSIS AND DISCUSSION

**A. Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the

court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Equal Protection and Discrimination under 42 U.S.C. §2000d**

As the Court has noted in prior motions, plaintiffs allege two federal claims of discrimination. Both claims require proof of intentional discrimination. Plaintiffs filed a civil rights, 42 U.S.C. § 1983 ("Section 1983") action, alleging Equal Protection violations and violation of Title VI (42 U.S.C. §2000d).

To state a viable Equal Protection claim under Section 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188, 194, 123 S.Ct. 1389, 1394 (2003). Likewise, pursuant to Title VI, under 42 U.S.C. § 2000d, intentional discrimination must be involved.

Official action will not be held unconstitutional solely because it results in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of

an invidious racial discrimination." *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049 (1976) (holding that disparate impact is insufficient for an Equal Protection Clause violation claim). Indeed, proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

Direct evidence of discriminatory purpose and intent may be unavailable. In such a situation, the court must make "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Arlington Heights*, 429 U.S. at 266. "The court must therefore look to the totality of the relevant evidence to determine whether invidious discriminatory purpose was a motivating factor for the decision." *Id.* The impact of the official action whether it "bears more heavily on one race than another," may provide an important starting point in the analysis. *Arlington Heights,* 429 U.S. at 264-265, 266. A variety of factors may be considered. The historical background of the decision is one evidentiary source, particularly if it reveals a series of official actions taken for invidious purposes. *Arlington Heights*, 429 U.S. at 267. The specific sequence of events leading up to the challenged decision also may shed some light on the decision maker's purposes. *Arlington Heights*, 429 U.S. at 267. Departures from the normal procedural sequence and the legislative or administrative history are also relevant. *Id.* at 268.

Plaintiffs have not presented direct evidence of intentional discriminatory conduct in the provision of parks. Plaintiffs do not present any evidence of racial considerations in funding for parks, or racial comments, or any other direct evidence. Rather, plaintiffs rely exclusively upon circumstantial evidence.

**C.    *Arlington* Factors**

Plaintiffs claim that the County's disparate funding of parks violates equal protection. Plaintiffs argue that the County obtains funding through various measures, including Proposition 10, to improve parks, but has not used the funding in plaintiffs' neighborhood parks. Plaintiffs argue that the Charles M. Sharp Park, located in a predominately white neighborhood, is a "beautifully appointed and maintained park." (Opposition p.8.) Plaintiffs note that the County contributed $20,000 to the Charles M. Sharp Park. Plaintiffs argue the County has removed playground equipment from the public parks

in plaintiffs' neighborhoods and has not replace the equipment. Plaintiffs argue:

> "[t]he striking and unexplained disparities between the equipment and services the County provides or has attempted to provide to parks in majority-White neighborhoods and those it provides to parks in the majority-Latino Plaintiff neighborhoods give rise to an inference that the County has acted with an invidious and discriminatory purpose in allocating funds and services among its parks." (Plaintiffs' opposition p. 11.)

In *Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court identified some of the circumstantial evidence that is relevant when discriminatory intent is at issue: (1) the discriminatory effect of the official action, (2) the historical background of the decision, (3) the specific sequence of events leading up to the challenged decision, (4) departure from the normal procedural sequence, (5) departures from the normal substantive standards, and (6) legislative or administrative history of the decision. *Arlington Heights*, 429 U.S. at 266-68.

The *Arlington* factors do not support an inference of discriminatory intent. The evidence the historical background, the specific sequence of events, departure from the normal procedural and substantive sequence do not support discriminatory intent. It is undisputed that the maintenance of all County-funded parks has been reduced due to the state budget crisis and the demand on the County funds for health and social services. (Doc. 423, Pl's Response to Undisputed Facts, no. 10.) It is undisputed that the County has a general "Mow and Blow" policy for parks, for which the County has resources only to keep the park grass mowed and watered, the grass cut, restrooms clean, and trash hauled away.[2] (Doc. 423, Pl's Response to Undisputed Facts, no. 11, 12.) It is undisputed that the play structures were removed from the park in Bret Harte neighborhood (Fairview Park) because of repeated vandalism and because of the play structures being out of compliance with OSHA. (Doc. 423, Pl's Response to Undisputed Facts, no. 17.) Indeed, all of the playground equipment in parks that failed to meet the state safety standard had to be removed. (Doc. 423, Pl's Response to Undisputed Facts, no. 27.) Some equipment was replaced with private donations from local community groups. (Doc. 423, Pl's Response to Undisputed Facts, no. 28.) It is undisputed that County general fund money was not spent

---

[2] Plaintiffs generally do not dispute these facts, except as it relates to the Charles M. Sharp Park, for which plaintiffs argue has ample amenities, is well manicured and well maintained playground equipment. (Doc. 423, Pl's Response to Undisputed Facts, no. 11-13.) The Charles M. Sharp park is discussed *infra*.

6

on replacing playground equipments. (Doc. 423, Pl's Response to Undisputed Facts, no. 31.) Plaintiffs do not present evidence from which they argue that the *Arlington* factors apply to this case.

Plaintiffs' main argument is that the Charles M. Sharp Park, located in a predominately white neighborhood, received preferential treatment in that it has better park amenities and received a $20,000 grant.[3] Plaintiffs compare their neighborhood parks, Parklawn Park and Fairview Park, in which their parks have dry grass, no play structures, and are poorly maintained bathrooms, with Charles M. Sharp Park.[4] (Doc. 423, Pl's Response to Undisputed Facts, no. 12-13.)

This "comparison" argument is similar to plaintiffs' argument in the "sewers, sidewalks, curbs, gutters and storm drains" motion for summary judgment. (Doc. 417; Order, July 30, 2007.) In the sewer motion, plaintiffs compared the infrastructure in their neighborhoods with that of the Keyes neighborhood, arguably, a predominately white neighborhood. Plaintiffs argued in the "sewers, sidewalks, curbs, gutters and storm drains" motion that the comparison of the infrastructure and funding in Keyes with the infrastructure and funding in their neighborhoods showed discriminatory impact. This Court, however, found that this "impact" was insufficient to raise an issue of fact. This Court ruled, among other things, that "a comparison of what occurred in this one neighborhood with that of the plaintiff neighborhoods is too narrow." (Doc. 417; Order, July 30, 2007, p. 14.)

Similarly, here, plaintiffs compare their neighborhood parks with one specific park. First, plaintiffs do not offer any evidence that the Charles M. Sharp park is owned by the County. Indeed, defendant presents evidence that the City of Modesto, not the County, owns the park.[5] Therefore, a comparison with a non-County owned park can not establish any discrimination by the County.

---

[3] As evidence, plaintiffs submit a "press release" by the City of Modesto for the proposition that the County spent $20,000 worth of Proposition 10 grant money toward the installation of new playground equipment at the Charles M. Sharp park. (Doc. 420, Spencer-Mork Decl. Exh. F.) In pertinent part, the press release states: "The City of Modesto has received $20,000 in funding from the Stanislaus County Children and Family Commission for the purchase of ADA accessible playground equipment at the Charles M. Sharp Park. . ." This evidence lacks any foundation, as Mr. Spencer-Mork is without personal knowledge of the facts. Plaintiffs do not present any competent evidence that shows the County owns this park or that the money came from the County.

[4] Plaintiffs submits photographs of the Parklawn and Fairview Park, as well as the Charles M. Sharp park to demonstrate the disparity between the parks' amenities. (Doc. 421, Decl. of Ignacio Musino.)

[5] See Reply declaration of Sonya Harringfeld, ¶3, who is the Director of the County Department of Environmental Resources and Parks and Recreation. (Doc. 426.)

Moreover, an isolated comparison of a single park is, again, too narrow a comparison pool. Plaintiffs do not argue any other *Arlington* factor. There is no evidence of the *Arlington* factors from which a reasonable jury could infer intentional invidious discrimination.

Plaintiffs argue that the County was prepared to spend $1.7 million to fund parks in majority-white Salida neighborhood. (Doc. 419, Plaintiffs Disputed facts, no. 5; Harringfeld Decl. ¶24.) Plaintiffs acknowledge that the Salida park was not built because the Salida Community Plan was not adopted. Plaintiffs argue that, while the money has not actually been spent, the County could have planned to spend that money on replacing playground equipment in the plaintiff neighborhoods. Plaintiffs argue the <u>decision</u> to spend the money was discriminatory.

Defendants present evidence that the $1.7 million was part of a community development plan approved in August 2002, but never actually proceeded. Defendants present evidence that the Salida park was intended to be a joint park between the County and the Salida School District which intended to build an elementary school and junior high on the property. (Doc. 400, Harringfeld Decl. ¶24; Harringfeld Reply Decl.¶6.) The community development plan was never adopted and therefore residential construction and schools were not constructed.

It is undisputed that the County did not spend money to construct the Salida park. Therefore, plaintiffs challenge the decision of the County to allocate funding for the park. Again, plaintiffs do not offer any evidence of invidious discrimination associated with the decision to allocate funding to the Salida park. Indeed, the *Arlington* factors do not show such invidious discrimination. No county maintained park existed in Salida and the concurrent plan of the Salida School District for a park/schools offered the County an opportunity to partner the financial burden. There is no evidence or inference of invidious discrimination. Again, plaintiffs offer a "comparison" of neighborhoods, but the evidence does not demonstrate that the neighborhoods are comparable.

Plaintiffs have failed to raise an issue of material fact on any claim for intentional discrimination. As shown, *infra*, plaintiffs have failed to carry their burden to raise an issue of fact as to the intentional discrimination. Accordingly, the motion will be granted on the first and second claims for relief.

**D.     Supplemental Jurisdiction**

With this last of the motions for summary judgment, this Court has disposed of all pending

federal claims. The claims that remain in this action are:

- Violation of the California Fair Employment and Housing Act, Govt.Code §12955(l),
- Violation of California Govt. Code §11135,
- Common law and statutory nuisance.

Defendants argue that this Court should decline to exercise supplemental jurisdiction over the state law claims because all federal claims have been dismissed. Plaintiffs argue that judicial economy would be furthered by this Court retaining the case, since the Court is familiar with the facts and claims.

Pursuant to 28 U.S.C. § 1367, district courts may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3) provides in relevant part:

> ( c) the district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction....

In the case before the Court, two factors of §1367( c) are present: the Court has dismissed all claims over which it has original jurisdiction, and the state claims raise novel or complex issues of state law.

The Ninth Circuit has held that state law claims "should" be dismissed if federal claims are dismissed before trial. *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 350, n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (recognizing that, in such cases, the balance of interests will usually point toward declining to exercise jurisdiction); *see Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1143 n. 7 (9th Cir. 2003) (The court did not abuse its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir.2001) (The district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state law claims when it dismisses all

of the claims over which it had original jurisdiction.)

Plaintiffs cite *Allen v. City of Los Angeles*, 92 F.3d 842, 846 (9th Cir.1996), *overruled in part*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc) for the proposition that judicial economy warrants this Court retaining the case. Plaintiffs argue judicial economy will be served because this Court is familiar with the extensive factual record and "no point would be served by requiring a state court to begin afresh in reviewing these issues." (Doc. 418, Plaintiffs' Opposition Brief p. 2.)

In *Allen*, the district court bifurcated plaintiff's civil rights claims from the cross-claim for contribution, indemnity, and reimbursement. In the first two phases, liability and damages where determined. In the third phase, the trial court decided the state law claims for contribution, indemnity and reimbursement. Prior to the civil case, the parties had already participated in a complex criminal case involving the same set of facts with the same judge as in the civil case. On appeal, the Ninth Circuit examined the supplemental jurisdiction *sua sponte*. *Allen*, 92 F. 3d at 845. The Court noted that "[i]n the usual case where all federal claims are resolved, a district court should decline jurisdiction over the remaining state claims." *Allen,* 92 F.3d at 845. The Court, however, found that the trial court did not abuse its discretion in exercising jurisdiction over the cross-claims founded solely in state law. The Ninth Circuit's decision, however, was based upon the unique set of facts. The parties had already completed two civil trials and a criminal trial. The same judge presided over both the complex criminal and civil trials and was intimately familiar with all of the facts and rulings. *Id.* The Court held that "[g]iven these circumstances, the district court did not abuse its discretion by retaining jurisdiction over the state law indemnification claims." (Emphasis added.)

The facts before this Court are not the same. Unlike the multiple trials in *Allen,* trial has not occurred in the instant case. Unlike the facts in *Allen,* this case does not present a unique set of facts that judicial economy would be advanced by this Court retaining jurisdiction. This Court finds no overwhelming issues of judicial economy which would weigh heavily towards exercising supplemental jurisdiction over Plaintiffs' state law claims.

In addition, another §1367( c) factor is present. The state law claims involve complex and novel state law claims. The parties' arguments regarding the application of Government Code § 11135 present sufficiently novel state law questions which would weigh against this Court's exercise of jurisdiction.

Section 11135 provides:

> "No person in the State of California shall, on the basis of race, national origin, ethnic group identification, religion, age, sex, sexual orientation, color, or disability, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

The parties dispute whether all county activities are covered by §11135 or whether §11135 mandates state funding be "project specific." What state provided project triggers liability under government Code §11135 is a subject of dispute. While the statute may not be complex on its face, the application of the law in these circumstances is uncertain.

In addition, intentional discrimination is not required for proof of a §11135 claim, which may be proved by disparate impact. This Court has not addressed the specific disparate impact evidence presented in this case, except as it relates to the Master Tax Sharing Agreement. (Doc. 329; Order of May 16, 2007.) Whether disparate impact evidence will be sufficient to sustain plaintiffs' burden either at law and motion or at trial, will be guided by state case law.

The other state law claims are equally subject to the parties' dispute. The parties dispute whether California's Fair Employment and Housing Act applies to the facts of this case. Further, in the nuisance claim, County defends on the ground it is immune from nuisance liability pursuant to statutory authorization of Civil Code §3482, among other statutory sections and regulations. Both of these claims will require statutory construction or interpretation and state case law analysis. As with Section 11135, these issues are those which should be resolved by a state court.

Once the district court identifies the presence of one Section 1367© factors, the court should consider whether the exercise of jurisdiction advances "the values of economy, convenience, fairness, and comity." *Allen v. City of Los Angeles*, 92 F.3d 842, 846 (9th Cir.1996), *overruled in part*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir.1997) (en banc).

The additional considerations of convenience, fairness, and comity would not be advanced by retaining this case. The parties are residents of the County of Stanislaus in which this case would be refiled. Litigation in that forum would be more convenient to all of the parties and witnesses.

Fairness to the parties may be better promoted by retaining the case in this Court. The parties are

scheduled for trial before this Court in March 2007. It is uncertain when the parties will be able to obtain a trial date in the state court. Nonetheless, although this case has a tentative trial date, the case will be set behind anticipated criminal cases, which have priority. As a result, it is unlikely that a trial in this case would occur on the date scheduled.[6]

As to comity, the federal court should not make "needless" decisions of state law. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966).

In the instant case, while the state and federal claims arise from the same set of operative facts, the proof of the federal claims versus the state claims is entirely different. Intentional conduct is required of the federal claims while disparate impact is permitted of the state law claims. This Court has not addressed the level of proof for disparate impact other than in the MTSA motion for summary judgment. *Gibbs*, 383 U.S. at 726-727 ("if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.") Any decisions this Court would make on the state claims are unnecessary because federal claims no longer exist in this action.

For these reasons, this Court declines to exercise supplemental jurisdiction over Plaintiffs' claims, and the claims are dismissed without prejudice.

/////
/////
/////
/////
/////
/////
/////

---

[6] Any applicable statute of limitations on the state law claim shall be tolled while the claim is pending and for a period of 30 days after dismissal unless state law provides a longer period. 28 U.S.C. § 1367(d).

1 **CONCLUSION**

2   For the foregoing reasons, the Court orders as follows:

3   1.   The Court GRANTS the motion as to claims for violation of Equal Protection and Title
4        VI of the Civil Rights Act of 1962
5   2.   The Court dismisses the remaining supplemental state law claims without prejudice.
6   3.    The dismissal of this action is without prejudice to plaintiff filing an action in state court
7        asserting state law claims.
8   4.   The clerk is directed to enter judgment in favor of the defendants as to the federal claims
9        and to close the file.

10  IT IS SO ORDERED.

11  **Dated:   August 20, 2007**              /s/ Lawrence J. O'Neill
                                              UNITED STATES DISTRICT JUDGE