1

2

3

4

5

6

7    **IN THE UNITED STATES DISTRICT COURT**

8    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   THE COMMITTEE CONCERNING                    CASE NO. CV-F-04-6121 LJO DLB
     COMMUNITY IMPROVEMENT, et al,
11                                               **ORDER ON DEFENDANT'S MOTION**
                                                 **TO DISMISS FOR LACK OF STANDING**
12                  Plaintiffs,

13        vs.

14
     CITY OF MODESTO, et al,
15
                    Defendants.
16   _____/

17        By notice filed on October 21, 2010, Defendant County of Stanislaus and Stanislaus County

18   Sheriff (collectively "Stanislaus") moved to dismiss the Fourth Amended Complaint for plaintiffs' lack

19   of standing, among other grounds.  Plaintiffs filed an opposition to the motions on November 24, 2010.

20   Stanislaus filed a reply on December 6, 2010.  The Court ordered the parties to meet and confer on the

21   issue of plaintiffs' standing, and ordered the parties to file a status report.  The Court reserved the issue

22   of standing and then ruled on the remainder of the issues presented in Stanislaus's motion to dismiss.

23   (See Doc. 526, Order filed January 3, 2011.)  On January 6, 2011, each party filed a status report

24   regarding standing.  Having considered the moving, opposition, and reply papers, and the parties' status

25   reports, as well as the Court's file, the Court issues the following order.

26                          **FACTUAL AND PROCEDURAL OVERVIEW**

27        Plaintiffs' complaint alleges numerous federal and state law causes of action, including violations

28   of Equal Protection, for discriminatory provision of municipal services.  The action is brought by

                                                 1

1  multiple plaintiffs who reside in specific neighborhoods of unincorporated Stanislaus County. Plaintiffs

2  assert claims on behalf of four specific unincorporated neighborhoods: Bret Harte, Hatch-Midway,

3  Robertson Road and Rouse-Colorado.  Individually named plaintiffs are identified as living in these

4  neighborhoods and representing the claims specific to each neighborhood.

5  Since the filing of the original complaint in 2004, the named plaintiffs for the  Robertson Road

6  and for the Rouse-Colorado neighborhoods no longer live in the neighborhoods.  As a result of the

7  deaths of two of the named plaintiffs and the sale of property by others, none of the remaining plaintiffs

8  reside in the Robertson Road or Rouse-Colorado neighborhoods.  (Doc. 519, Opposition p.3.)  The

9  Fourth Amended Complaint concedes that no named plaintiff lives in these two neighborhoods.

10  **ANALYSIS AND DISCUSSION**

11  Defendants move to dismiss all claims pertaining to or arising out of the Robertson Road and

12  Rouse-Colarado neighborhoods based on lack of standing.

13  The doctrine of standing is comprised both of constitutional or "Article III" requirements and

14  "prudential considerations." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601,

15  1607 (1979).

16  **A.      Article III Constitutional Requirements**

17  The constitutional requirements for standing emanate from Article III, section 2 of the United

18  States Constitution, which grants federal courts jurisdiction over "cases" and "controversies." *Arizonans*

19  *for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).  "It is the responsibility of the

20  complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution

21  of the dispute and exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct.

22  2197 (1975).

23  To carry their burden of showing they have standing,  plaintiffs must allege 1) an "injury in fact"

24  that is concrete, particularized, and actual or imminent, not hypothetical; 2) causation; and 3) that it is

25  likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

26  *American Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006).  "At an

27  irreducible minimum, Article III requires that the plaintiff show that he has personally suffered some

28  actual or threatened injury as a result of defendant's illegal conduct . . . and that the injury 'fairly can be

1    traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Fair v. United*

2    *States Envir. Protection Agency*, 795 F.2d 851, 853 (9th Cir. 1986) (citation omitted; quoting *Simon v.*

3    *Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925 (1975) (standing

4    is a constitutional limitation of federal court jurisdiction to actual cases or controversies and absent a

5    showing of standing, an exercise of federal court power would be inconsistent with Article III

6    limitations)).

7         Whether a plaintiff has standing is evaluated as of time the operative complaint is filed. *See*

8    *County of Riverside v. McLaughlin*, 500 U.S. 44, 51, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (analyzing

9    standing as of the time the "second amended complaint was filed").  When evaluating whether these

10   three elements are present, we must look at the facts " as they exist at the time the complaint was filed."

11   *American Civil Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006); *Clark v. City*

12   *of Lakewood*, 259 F.3d 996, 1006 (9th Cir.2001) ("Standing is determined by the facts that exist at the

13   time the complaint is filed.").  Even if a plaintiff has standing with respect to a claim for relief at the

14   time the complaint is filed, mootness considerations "require courts to look to changing circumstances

15   that arise after the complaint is filed." *Lomax*, 471 F.3d at 1016.  "The case-or-controversy requirement

16   demands that, through all stages of federal judicial proceedings, the parties continue to have a personal

17   stake in the outcome of the lawsuit." *Carty v. Nelson*, 426 F.3d 1064, 1071 (9th Cir. 2005).

18        Plaintiffs argue, that while no named plaintiff reside in the Robertson Road or Rouse-Colorado

19   neighborhoods, the remaining plaintiffs have interests in those neighborhoods that are the same.

20   "Plaintiffs satisfy the injury in fact requirement because they have suffered and continue to suffer

21   personal and actual injury to their health, safety and dignity as a result of living in Latino Unincorporated

22   Neighborhoods that lack sidewalks, sewer, storm drainage, and receive less effective law enforcement

23   protection."  (Doc. 519, Opposition p. 5-6.)  Plaintiffs argue that a favorable ruling would redress

24   plaintiffs' injuries because all neighborhoods suffer from pattern and practice discrimination.  *Id.*

25        Defendants argue that plaintiffs do not have standing because they cannot show injury in fact.

26   Plaintiffs have not pled, nor can they establish, that they, themselves, have suffered or will suffer any

27   particularized or concrete injury as a result of the County's purported treatment of neighborhoods other

28   than their own.  (Doc. 522, Reply p.5.)  Defendants argue that the purported injuries of injury to health,

1   safety and dignity can only be asserted by persons who live in the neighborhoods which suffer these

2   conditions (lack of infrastructure, disparate application of the Master Tax Sharing Agreement, disparate

3   provision of law enforcement).

4         Standing "injury in fact" generally requires a showing that plaintiff has suffered actual loss,

5   damage or injury, or is threatened with impairment of his or her own interests. *Gladstone Realtors v.*

6   *Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608 (1979). An interest shared generally with

7   the public at large is not sufficient. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117

8   S.Ct. 1055, 1067 (1997). "The Supreme Court has repeatedly refused to recognize a generalized

9   grievance against allegedly illegal government conduct as sufficient to confer standing." *See Carroll*

10  *v. Nakatani*, 342 F.3d 934, 940-41 (9th Cir. 2003). The standing doctrine "requires us to ask ... 'Was

11  this person hurt by the claimed wrongs?' " *Carroll v. Nakatani*, 342 F.3d at 947; *see also Valley Forge*

12  *Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75, 102 S.Ct.

13  752 (1982) (holding that "the plaintiff generally must assert his own legal rights and interests, and cannot

14  rest his claim to relief on the legal rights or interests of third parties"). In *United States v. Hays,* 515

15  U.S. 737, 744–745, 115 S.Ct. 2431, 2436 (1995), the Court held that a voter who did not live in a

16  racially-gerrymandered district lacked standing to bring an equal protection challenge. The residents

17  who lived in one congressional district lacked standing to raise racial gerrymandering claim with respect

18  to different congressional district. Where the plaintiff does not live in a gerrymandered district, the

19  plaintiff does not suffer individualized harm because no racial criteria has been applied to the plaintiff.

20  Therefore, plaintiff asserts only a generalized grievance against allegedly illegal government conduct

21  which is insufficient for standing. *Id.* at 743.

22        Here, plaintiffs do not allege injury in fact. The plaintiffs do not have a particularized injury to

23  themselves for conduct arising in other neighborhoods.[1] They assert an mere "abstract concern" in a

24

25        [1] The FAC alleges the standing as follows: "Plaintiffs have standing to challenge the discriminatory policies of the
26  City and the County as to the Robertson Road and Rouse-Colorado neighborhoods for three reasons. First, Plaintiffs who live
    in the neighborhoods of Bret Harte and Hatch-Midway suffer from the same discriminatory policies as residents of Robertson
    Road and Rouse- Colorado. Second, Plaintiffs suffer stigmatic injury as a result of the County's failure to provide municipal
27  services to Latino Unincorporated Neighborhoods including Robertson Road and Rouse-Colorado and the exclusion of
    Robertson Road from the Master Tax Sharing Agreement. Defendants' policies towards the Latino Unincorporated
28  Neighborhoods brand Latinos as less desirable residents than Whites and force Plaintiffs to interact with residents of the City

1  public issue. *See Simon v. Eastern Kentucky Wel. Right Org.*, 426 U.S. 26, 40, 96 S.Ct. 1917 (1076).

2  For instance, plaintiffs allege that they suffer "stigmatic injury" from the County's failure to provide

3  municipal services to other Latino Unincorporated Neighborhoods. (Doc. 508, FAC ¶19.) They are also

4  concerned with County policies which "brand Latinos as less desirable residents" and that residents of

5  Robertson Road and Rouse-Colorado will suffer from discriminatory policies, which will prevent

6  infrastructure construction and preclude the possibility of annexation for those neighborhoods. (Doc.

7  508, FAC ¶19.) These harms in the Robertson Road and Rouse-Colorado neighborhoods are not

8  particularized injuries to the plaintiffs living in the other neighborhoods. The plaintiffs residing in Bret

9  Harte and Hatch-Midway and are not personally harmed because the challenged conduct occurred in

10 Robertson Road and Rouse-Colorado. The basis for plaintiffs' complaint is alleged governmental

11 discriminatory practices in providing municipal services. In challenges to discriminatory practices,

12 standing is conferred only on those what are personally denied equal treatment. *See Carroll v. Nakatani*,

13 342 F.3d 934, 940-41 (9th Cir.2003) (holding that "even if a government actor discriminates on the basis

14 of race, the resulting injury accords a basis for standing only to those persons who are personally denied

15 equal treatment.") Plaintiffs cannot allege an particulaized injury to themselves, as residents of other

16 neighborhoods, for discriminatory conduct occurring elsewhere. Absent evidence of special harm to him

17 or her personally for conduct elsewhere, plaintiffs would be asserting only a generalized grievance

18 against governmental conduct of which these plaintiffs do not approve. Plaintiffs fail to allege injury

19 in fact. The plaintiffs in the neighborhoods of Bret Harte and Hatch-Midway do not have standing to

20 assert injury to persons in the other neighborhoods of Robertson Road and Rouse-Colorado.

21      When there is no injury in fact, the Court need not address the second and third standing

22 requirements of causation and redressability. *Carroll,* 342 F.3d at 943.

23

24

25 and the County under this badge of inferiority. Third, Plaintiffs suffer injury because the challenged policies regarding the MTSA and the County's infrastructure spending tend to prevent the Latino Unincorporated Neighborhoods, including Robertson Road and Rouse-Colorado, from ever becoming annexed to the City. Plaintiffs do not seek by this lawsuit to attain

26 annexation to the City, but Plaintiffs do seek to remove these barriers to annexation of the Latino Unincorporated Neighborhoods, including Robertson Road and Rouse- Colorado. If Plaintiffs succeed in obtaining annexation for their own

27 neighborhoods, the continued inability of Robertson Road and Rouse- Colorado to attain annexation due to the challenged policies will deprive Plaintiffs of the opportunity to associate freely with residents of Robertson Road and Rouse-Colorado

28 as City residents (e.g., in City elections, that are attendant to residency in the City)." (Doc. 508, FAC ¶19.)

1  **B.      Prudential Considerations**

2      "Prudential" standing embodies "judicially self-imposed limits on the exercise of federal

3  jurisdiction. *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct. 2301 (2004).

4  Prudential standing encompasses at least three limitations: "the general prohibition on a litigant's raising

5  another person's legal rights, the rule barring adjudication of generalized grievances more appropriately

6  addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the

7  zone of interests protected by the law invoked." *Id.* at 12.

8      Plaintiffs argue that the concern of asserting the rights of third parties does not apply because

9  plaintiffs are personally and directly harmed by the challenged conduct.  Plaintiffs argue they satisfy the

10  prudential standing requirements because they are injured by the same discriminatory policy as residents

11  of Rouse Colorado and Robertson Road, unincorporated islands similar to their own in the lack of equal

12  municipal services and suffering from the same discriminatory acts and omissions.

13      Plaintiff relies upon *Village of Arlington Heights v. Metropolitan Housing Development Corp.*,

14  429 U.S. 252, 97 S.Ct. 555 (1977). In *Arlington Heights*, the Court held that the plaintiffs had sufficient

15  personal injuries to challenge the City's denial of a housing project for low-income persons of a minority

16  race.  In *Arlington Heights*, the Court held that a black plaintiff who sought to live in the housing project

17  planned for the City of Arlington Heights had standing because "[h]is is not a generalized grievance.

18  Instead ... [his injury] focuses on a particular project and is not dependent on speculation about possible

19  actions of third parties not before the court." *Id.* at 264, 97 S.Ct. at 563.  The Court noted that if relief

20  were granted, there was a "substantial probability" that the project would be built and the plaintiff would

21  be provided the housing he sought.  *Id.*  In addition, a co-plaintiff corporation had standing because it

22  had suffered a financial injury from denial of the project and had a "right to be free of arbitrary or

23  irrational zoning actions." 429 U.S. at 263, 97 S.Ct. 555.

24      *Arlington Heights* does not assist plaintiffs.  Both plaintiffs in *Arlington Heights* had standing

25  because they were directly harmed by the denial of the housing project.  The individual plaintiff had

26  standing because he wanted to live in the project, and the corporation had standing because it was the

27  developer of the project.  Here, none of the plaintiffs have shown anything more than a generalized

28  concern for county wide discriminatory practices.

1        Plaintiffs' case is more like *Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343

2    (1975).  In *Warth*, plaintiffs did not have standing to challenge alleged discriminatory zoning practices

3    of a neighboring town since there was no incidental adverse effect on plaintiffs caused by action of

4    neighboring town.  To have standing to bring an action against a state or local government, the plaintiff

5    must usually show that the defendant's conduct violated his or her own rights and not the rights of some

6    third party.   The Court noted that "none of these petitioners has a present interest in [the neighboring

7    town] property; none is himself subject to the ordinance's strictures; and none has even been denied a

8    variance or permit by [the zoning] officials." *Id.* at 505.  The requested relief would not have benefitted

9    the plaintiffs because they did not reside in the area that was affected by the challenged policy.  A party

10   is denied standing to assert the rights of third persons. *Warth v. Seldin*, 422 U.S., at 499, 95 S.Ct., at

11   2205.

12       Here, the plaintiffs, who reside in Bret Harte and Hatch-Midway neighborhoods, are suing for

13   injuries suffered by persons residing in the Robertson Road and Rouse-Colorado neighborhoods, as a

14   result of conduct by the defendants.  Plaintiffs are not injured by an infrastructure or municipal services

15   policy applied in these other neighborhoods.  While plaintiffs argue that they are equally harmed by

16   defendant's pattern and practice of discrimination, plaintiffs are challenging alleged discriminatory

17   practices as they are applied in other neighborhoods.  Plaintiffs neither own no property nor reside in the

18   Robertson Road and Rouse-Colorado neighborhoods.  Plaintiffs are not subject to the policies as they

19   apply to the Robertson Road and Rouse-Colorado neighborhoods.  This Court finds, as shown *infra*, that

20   plaintiffs allege a "generalized concern" which does not confer standing.

21   **C.     Amendment**

22       After these motions were fully briefed, plaintiffs submitted correspondence indicating new

23   plaintiffs are intended to be added who reside in the Rouse-Colorado neighborhood and Robertson Road

24   neighborhood.  This Court directed the parties to meet and confer on the issue of standing and the

25   potential new plaintiffs.  The parties were unable to resolve the issue of standing.  In plaintiffs' status

26   report filed on January 6, 2011, plaintiffs ask as follows: "[P]laintiffs request that they be permitted to

27   file a motion to add additional plaintiffs who reside or own property in the Rouse-Colorado and

28   Robertson Road Neighborhoods."

1    Fed.R.Civ.P. 15(a) provides that after service of a responsive pleading, "a party may amend the

2  party's pleading only by leave of court or by written consent of the adverse party; and leave shall be

3  freely given when justice so requires."  Granting or denial of leave to amend rests in the trial court's

4  sound discretion and will be reversed only for abuse of discretion.  *Swanson v. United States Forest*

5  *Service,* 87 F.3d 339, 343 (9th Cir. 1996).  In exercising discretion, "a court must be guided by the

6  underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or

7  technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

8    Leave to amend will be denied at this point.  Plaintiffs may bring a separate motion to amend to

9  add potential new plaintiffs.  In that motion, the parties may address the factors to be considered by the

10  Court on a motion to amend: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and/or (4)

11  futility of the proposed amendment.  *Loehr v. Ventura County Community College District,* 743 F.2d

12  1310, 1319 (9th Cir. 1984).  Plaintiffs shall file their motion to amend within ten (10) days of the service

13  of this order.  Defendants shall file a response, or file a notice of non-opposition, within five (5) days

14  after the motion is filed.  Plaintiffs shall file a reply within five (5) days after the opposition is filed.  The

15  motion will be taken under submission by the Hon. Lawrence J. O'Neill, District Judge once the briefing

16  is complete.

17                              **CONCLUSION AND ORDER**

18    For the foregoing reasons, the Court GRANTS the motion to dismiss with leave to amend as

19  provided in this order.

20  IT IS SO ORDERED.

21  **Dated:    January 13, 2011**                    **/s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28